In re Dennis R. CLEMMER, Sr., Debtor.

Bankruptcy No. 94–33182.

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 2, 1995.

Frantz, McConnell & Seymour, Michael W. Ewell, Knoxville, TN, for William T. Hendon, Trustee.

John P. Newton, Jr., Knoxville, TN, for debtor.

## MEMORANDUM ON TRUSTEE'S OBJECTION TO EXEMPTIONS

RICHARD S. STAIR, Jr., Chief Judge.

The debtor commenced this Chapter 7 case on December 28, 1994. The Trustee, William T. Hendon, timely filed an Objection to Exemptions (Objection) on February 2, 1995, which was amended April 19, 1995, asserting that two annuity contracts and three life insurance policies claimed as exempt by the debtor are not "qualified" properties under

Tennessee law.[1] Alternatively, the Trustee argues that the debtor's exemptions in the annuity contracts and life insurance policies should be deemed forfeited or waived because he "failed to adequately, accurately and fully disclose the existence of these assets."

A hearing on the Trustee's Objection was held on July 7, 1995, to determine the following issues set forth in the Pretrial Order entered June 21, 1995: (1) whether the funds in the two annuity contracts and the cash surrender values of the three life insurance policies claimed as exempt by the debtor are, in fact, exemptible under Tennessee law; (2) whether the debtor failed to adequately, accurately, and fully disclose all assets now claimed as exempt; and (3) whether the debtor's alleged failure to disclose the assets results in a forfeiture or waiver of the right to claim them as exempt.

The record before the court consists of undisputed facts and documents stipulated by the parties through written Joint Stipulations filed June 29, 1995, and evidence introduced at the July 7, 1995 hearing on the Trustee's Objection.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

Prior to the commencement of this bankruptcy case, Alside Supply Center of Knoxville (Alside) obtained a judgment against the debtor in state court. Thereafter, Alside took two postjudgment discovery depositions of the debtor, one on January 21, 1992, and the other on April 29, 1993, during which the debtor failed to disclose the existence of his two annuity contracts and three life insurance policies with Metropolitan Life Insurance Company (MetLife). Alside ultimately learned of the existence of at least the two annuity contracts, and, as stipulated by the parties, caused a "garnishment or execution" to be issued against MetLife.[2]

The debtor filed his bankruptcy petition on December 28, 1994, and the next day, December 29, 1994, MetLife forwarded $83,-455.24 to the Clerk and Master of the Knox County Chancery Court.[3] The parties have stipulated, solely for the purpose of determining the exemption issues presently before the court, that the $83,455.24 came from the debtor's two annuity contracts, specifically $58,568.89 came from Annuity Contract No. 007047166MA and $24,886.35 from Annuity Contract No. 007051979MA. The parties have further stipulated that on or about January 25, 1995, the money held by the chancery court was turned over to the Trustee, and MetLife, pursuant to the terms of the annuity contracts and insurance policies, is presently holding the funds remaining in the two contracts and the cash surrender values of the three policies.

The debtor filed his schedules and Statement of Financial Affairs on January 12, 1995. On Schedule B, entitled "Personal Property," the debtor reported an $84,000 interest in MetLife "IRA, ERISA, Keogh, or other pension or profit sharing plans." On Schedule C, entitled "Property Claimed as Exempt," the debtor claimed an $84,000 exemption in his "Interest in Metropolitan Life" pursuant to Tenn.Code Ann. § 26-2-104(b) (Supp.1994). The parties have stipulated that the debtor did not list his three life insurance policies on his January 12, 1995 schedules.

On April 17, 1995, the debtor filed an Amendment to Schedules B & C to adjust his exemption of his MetLife policies to claim the two annuity contracts as exempt pursuant to Tenn.Code Ann. § 26-2-104(b), § 26-2-111(1)(D) (Supp.1994), and § 56-7-203 (1994), and to include as personal property his three life insurance policies and claim

---

1. The amended or superseding Objection to Exemptions filed by the Trustee on April 19, 1995, was prompted by the debtor's filing of an amendment to his exemption schedule on April 17, 1995.

2. The parties have not stipulated or provided further evidence regarding the "garnishment or execution."

3. Although not stipulated by the parties, the court, from other litigation generated by this transfer, takes judicial notice that MetLife forwarded the $83,455.24 to the chancery court in response to the execution levied against it by Alside. Fed.R.Evid. 201.

them as exempt pursuant to Tenn.Code Ann. § 26–2–102 (1980), § 26–2–111(1)(D), and § 56–7–203.[4] The debtor's Amendment assigns the following values to the contracts and policies:

1. Annuity Contract No. 007051979MA— $41,185.27[5]

2. Annuity Contract No. 007047166MA— $97,456.73

3. Insurance Policy No. 751279805A— $4,168.20

4. Insurance Policy No. 785032046A— $4,376.18

5. Insurance Policy No. 904455015UL— $5,771.69

The Trustee's Objection concerns the debtor's exemption of these five properties, which are more fully described as follows:

1. Annuity Contract No. 007047166MA was purchased by the debtor on December 29, 1982, and Annuity Contract No. 007051979MA was purchased by the debtor on February 4, 1984. Under both contracts, the debtor is the owner and annuitant, and Dennis Clemmer, Jr., the debtor's son, is named as the beneficiary in the event the debtor dies prior to distribution under the contracts.

2. Life Insurance Policy No. 751279805A was issued on December 28, 1975, and Life Insurance Policy No. 785032046A was issued on October 2, 1978. Both policies insure the life of Dennis Clemmer, Jr., and the debtor is the owner and beneficiary.

3. Life Insurance Policy No. 904455015UL was issued on March 24, 1990. The policy is owned by the debtor and insures the debtor's life. The beneficiaries are Sarah Clemmer, the debtor's mother, and Dennis Clemmer, Jr.

Dennis Clemmer, Jr. is an adult, who was born on September 1, 1974. Sarah Clemmer and Dennis Clemmer, Jr. were not financially dependent on the debtor at the time he commenced his Chapter 7 case nor have they been financially dependent on the debtor

since the filing of the debtor's bankruptcy petition.

## II

In the Joint Stipulations, the debtor waived his right to rely on Tenn.Code Ann. §§ 26–2–104(b) and 26–2–111(1)(D); however, the debtor continues to rely on Tenn.Code Ann. § 56–7–203, which provides:

The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of such persons, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to such person.

Tenn.Code Ann. § 56–7–203 (1994). This section allows for the exemption of funds in annuity contracts and the cash surrender values of policies rather than only the death proceeds payable under the contracts and policies. *See Newport v. Thurman (In re Thurman),* 127 B.R. 401, 403–06 (M.D.Tenn. 1991) (discussing the historical basis of the present-day interpretation of section 56–7–203 and concluding that "the language of § 203 demonstrates that it was designed to apply in cases only where the policy holder is still alive"); *Lunsford v. Nashville Sav. & Loan Corp.,* 162 Tenn. 179, 35 S.W.2d 395 (1931).

The Trustee contends that the debtor's annuity contracts and life insurance policies are not exemptible under section 56–7–203 because they are not "upon the life of any person made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of [the debtor]." § 56–7–203. The debtor conceded at trial that Life Insurance Policy No. 751279805A and No. 785032046A are not exemptible under section 56–7–203 because the policies name the debtor as the

---

4. The parties have stipulated that the debtor's schedules were amended on April 17, 1995, to list the three life insurance policies.

5. The parties have stipulated that this annuity contract was incorrectly identified as No. 0077051979MA in the debtor's amended schedules and the Pretrial Order entered June 21, 1995.

beneficiary, but claims that $3,000 of Policy No. 751279805A is exempt pursuant to Tenn. Code Ann. § 26–2–102. The Trustee's Objection will therefore be sustained with respect to the full cash surrender value of Policy No. 785032046A, and the cash surrender value of Policy No. 751279805A to the extent it exceeds $3,000.

The debtor contends that the two annuity contracts, which name his son as the death beneficiary, and the one insurance policy, No. 904455015UL, which names his son and mother as "joint" [6] beneficiaries, are properly exempted under section 56–7–203. In interpreting section 56–7–203, the use of the phrase "and/or" evidences "a clear option of selection of members of a class of beneficiaries"; therefore, insurance or annuity proceeds "payable to or bequeathed to any one or more of the beneficiaries named in the statute [are] exempt from the claims of creditors." *In re Estate of Bruce,* 58 Tenn.App. 435, 430 S.W.2d 884, 887–88 (interpreting Tenn.Code Ann. § 56–1110, which was recodified in materially identical form as section 56–7–203), *cert. denied* (Tenn.1968).

■ The Trustee argues, in support of his contention that the beneficiaries named in the three annuity contracts and one insurance policy are not included under section 56–7–203, that the court should limit the statute's application to dependent children. The statutory language of section 56–7–203 and the interpreting Tennessee case law do not support the Trustee's argument. The Tennessee Legislature could easily have prefaced the term "children" with the word "dependent," but it chose not to do so. Moreover, if this court imposed a dependency requirement on the term "children," as used in section 56–7–203, the same requirement would most certainly apply to spouses, which is contrary to Tennessee case law. *See Overman v. Overman,* 570 S.W.2d 857, 859 (Tenn.1978) (failing to discuss whether the wife was financially dependent on her husband before finding that the annuity contracts, to which she was the "primary beneficiary," were exempt). Therefore, the court finds that the statutory language only allows for one interpretation: the term "children" includes minor or adult, financially dependent or nondependent children of the debtor. *See Stewart Title Guar. Co. v. McReynolds,* 886 S.W.2d 233, 235 (Tenn.Ct.App.) (Where "the statutory language is clear and plain and fully expresses legislative intent, there is no reason to resort to rules of construction." (citing *Anderson v. Outland,* 210 Tenn. 526, 360 S.W.2d 44 (1962))), *perm. to appeal denied* (Tenn.1994).

■ The two annuity contracts name the debtor's son as the sole beneficiary. Accordingly, the court finds that Annuity Contract No. 007051979MA and No. 007047166MA are protected from creditors under section 56–7–203 to the extent the court determines that the debtor's exemptions have not been waived or forfeited.

■ Life Insurance Policy No. 904455015UL, through the Designation of Revocable Beneficiary page of the policy attached as part of Exhibit 5 to the parties' Joint Stipulations, names the debtor's nondependent son and mother as revocable beneficiaries, with his son to receive two-thirds of the proceeds of the policy and his mother to receive the remaining one-third. Based on the terms of the policy, the debtor's son might potentially receive 100% of the proceeds if the debtor's mother predeceases the debtor and his son.[7] On the other hand, following the conclusion of the debtor's bankruptcy case, the debtor might revoke his

---

6. The parties stipulated at the July 7, 1995 hearing that the debtor's son and mother are joint beneficiaries to Policy No. 904455015UL. However, the term "joint" should not be interpreted to mean that each beneficiary has an undivided, one-half interest in the policy. The copy of the policy introduced into evidence through the parties' Joint Stipulations as Exhibit 5 provides that the debtor's son is a two-thirds beneficiary and the mother is a one-third beneficiary of the policy.

7. The Designation of Revocable Beneficiary page also requests the debtor to designate whether the share of any beneficiary who predeceases the debtor will be divided among the surviving beneficiaries or will revert to the debtor. The court is unable to determine which designation was made by the debtor because the Designation page is partially illegible; however, regardless of the choice made by the debtor, the outcome in this case will not change.

designation and name himself as the sole beneficiary of the policy, or cancel the policy and obtain the cash surrender value for his personal use.

The statutory language of section 56–7–203 supports a finding that the Tennessee Legislature, while recognizing that beneficiaries could change over time, intended that the statute be applied to those beneficiaries named without regard to how the proceeds of the policy might ultimately be distributed. *See Overman,* 570 S.W.2d at 859. The legislature expressly included the phrase "whether or not the right to change the named beneficiary is reserved by or permitted to [the debtor]" in section 56–7–203. Although the application of this language might contradict any intent to only protect a spouse, child, or dependent relative,[8] it does not contradict the legislature's intent expressed by the statute, that is, to protect any life insurance policy or annuity contract from creditors to the extent the beneficiary presently named is a spouse, child, or dependent relative.

Moreover, the Tennessee Supreme Court, in holding that the proceeds of a life insurance policy were exempt although the policy allowed for the changing of the beneficiary, has expressly stated:

At the time the statute in question was enacted, there was some doubt as to whether the creditors of an insured could appropriate the cash surrender value of a policy; that is, whether it was exempt from creditors, and, most likely, the statute was passed to remove any doubt as to that matter.

*Lunsford,* 35 S.W.2d at 395 (interpreting 1925 Tenn.Pub.Acts 113, which is materially identical to section 56–7–203). The Tennessee Supreme Court also found in *Overman* that a debtor-annuitant's rights in two annuity contracts, which named the debtor-annuitant's wife as the "primary beneficiary," were exempt based on the legislative purpose of the statute "to deliver intact to the present wife the proceeds of an insurance policy or an annuity upon the life of a debtor, where

the policy or annuity was made for the benefit of the wife of the debtor." 570 S.W.2d at 859.

The debtor's son is a two-thirds beneficiary to Life Insurance Policy No. 904455015UL. Therefore, two-thirds of the policy is protected under section 56–7–203 to the extent the court finds that the debtor's exemptions have not been forfeited or waived. The remaining one-third of the policy, to which the debtor's nondependent mother is the beneficiary, is not afforded protection under section 56–7–203. The Trustee's Objection will be granted with respect to one-third of the cash surrender value of Life Insurance Policy No. 904455015UL.

### III

■ In addition to the section 56–7–203 exemptions, the debtor also claims a $3,000 exemption in Life Insurance Policy No. 751279805A, pursuant to Tenn.Code Ann. § 26–2–102, which provides:

Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to his vocation or pursuit or to the ownership of his abode. Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest.

Tenn.Code Ann. § 26–2–102 (1980).

The Trustee argued during the July 7, 1995 hearing that the debtor should not be permitted to claim a $3,000 exemption in Policy No. 751279805A because he failed to disclose this asset, among others, during the state court proceedings. Tennessee opted out of the federal exemptions provided for in

---

8. As previously mentioned, the debtor might change the beneficiaries, or cancel the policy in the future and retain the cash surrender value for his own use. Either action could result in the

debtor alone benefitting from the exemption rather than his "spouse and/or children, or dependent relatives." § 56–7–203.

Bankruptcy Code § 522, in favor of restricting its residents to the exemptions provided for under Tennessee law. *See* Tenn.Code Ann. § 26–2–112 (1980). Courts have held that residents of an opt-out state are required in bankruptcy court to " 'comply with the state mechanisms for claiming those exemptions.' " *Norton v. Brokerage Oil Co. (In re Norton)*, 30 B.R. 712, 715 (Bankr. E.D.Tenn.1983) (emphasis omitted) (quoting *Rhodes v. Stewart*, 705 F.2d 159, 164 (6th Cir.) (discussing *Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir.1982)), *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983)).

Section 26–2–114 of the Tennessee Code sets forth the following procedures for claiming exemptions in personal property under section 26–2–102:

(a) Should a bona fide citizen permanently residing in Tennessee become a judgment debtor, he must exercise the exemption as provided in § 26–2–102 by filing a list of all the items he then owns, constructive or actual, which he chooses to declare as exempt, along with the value of each such item. Such listing shall be on oath and filed with the court having jurisdiction. Furthermore, the judgment debtor may modify or amend the listing from time to time as he deems necessary.

(b) Such claim for exemption by way of listing, modification or amendment thereto may be filed either before or after the judgment in the case has become final and shall have effect as to any execution issued after the date such claim for exemption is filed. *However, subject to such exemption as is further set forth herein a claim for exemption filed after the judgment has become final will have no effect as to an execution which is issued prior to the date the claim for exemption is filed, and as to such preexisting execution the claim for exemption shall be deemed waived.*

(c) It shall be the duty of the clerk of the court from which process is issued to cause to be stapled to, printed upon or otherwise securely affixed to the warrant, summons or other leading process in the action a typed or printed notice [9] .... .

Tenn.Code Ann. § 26–2–114 (1980) (emphasis added).

This court, speaking through Judge Bare, held in *Norton* that a debtor's $4,000 exemption under section 26–2–102 claimed in bankruptcy court was not effective against a creditor's "levy and sale by judicial process," because the exemption had not been previously declared in state court within the prescribed time set forth in Tenn.Code Ann. § 26–2–114.[10] 30 B.R. at 715. In *Norton*,

---

**9.** The statute provides that the notice shall read as follows:

NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Tenn.Code Ann. § 26–2–114(c) (1980).

**10.** The holding in *Norton* is based, in part, on the conclusion by the Fourth Circuit Court of Appeals that for bankruptcy purposes, "residents of Virginia, which has exercised the option to opt-out, are not only restricted to state exemptions but must moreover comply with the state mechanisms for claiming those exemptions." *Rhodes*, 705 F.2d at 164 (discussing *Zimmerman*, 689 F.2d at 472, which relies on *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924)); *see Norton*, 30 B.R. at 715; *see also Myers v. Matley*, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943). Interestingly, in 1992 the Bankruptcy Court for the Eastern District of North Carolina reversed its prior holding, as stated in *In re McLamb*, 93 B.R. 72, 75 (Bankr.E.D.N.C.1988), "that a prepetition procedural waiver of exemption rights remains effective in bankruptcy," when the court determined that new developments in North Carolina law suggested a different result. *See In re Pinner*, 146 B.R. 659 (Bankr.E.D.N.C.1992). The

the debtor failed to claim his vehicle as exempt under section 26–2–102 prior to the issuance of two executions, by which the judgment creditor ultimately obtained possession of the vehicle. The court found that section 26–2–114 was "clear and unambiguous" with regard to the requirement that " 'a claim for exemption filed after the judgment has become final will have no effect as to an execution which is issued prior to the date the claim for exemption is filed.' " *Id.* at 715 (quoting § 26–2–114(b)). Accordingly, the court held that the debtor's subsequent claim of exemption in his bankruptcy schedules was ineffective against the judgment creditor because the debtor failed to exercise his exemption right in accordance with section 26–2–114. *But see McFarlin v. Watts,* 895 S.W.2d 687, 691 (Tenn.Ct.App.1994) ("Tenn. Code Ann. § 26–2–114 says the exemption cannot be claimed after the execution issues; Tenn.Code Ann. § 26–2–407 seems to say that it can, but the Attorney General has issued an opinion that this section does not apply to the $4,000 exemption in Tenn.Code Ann. § 26–2–102." (citing Op.Tenn.Att'y Gen. 90–89 (Oct. 1, 1990))), *perm. to appeal denied* (Tenn.1995).

The only evidence presented to the court regarding executions on the policy presently claimed as exempt under section 26–2–102 is contained in the parties' Joint Stipulations, which provide in material part:

> On or after December 29, 1994, Metropolitan Life Insurance Company forwarded $83,455.24 to the Clerk and Master of the Knox County Chancery Court. Approximately one month following the filing of the bankruptcy petition herein, on or about January 25, 1995, the $83,455.24 held by the Knox County Chancery Court Clerk's office relating to a garnishment or execution issued by Alside Supply Center of Knoxville was transferred to William T. Hendon, as Trustee in this bankruptcy case. A copy of an Agreed Order evidencing Chancery Court approval of this transfer is attached as Exhibit 6.

> ... The funds, in the amount of $83,-455.24, sent by Metropolitan Life Insurance Company to the Knox County Chancery Court Clerk are stipulated, solely for the purpose of the determination of these exemption issues, to have come from the two annuity contracts at issue herein.... Metropolitan Life Insurance Company is holding the amounts remaining in the two annuity contracts and the cash surrender value of the life insurance policies pursuant to the terms of said policies.

These stipulations do not support a finding that the judgment creditor executed on and obtained possession of the cash surrender value of Life Insurance Policy No. 751279805A. Rather, the parties' stipulation that the value of the policy is presently being held by MetLife infers that there has been no execution issued with respect to this property. Moreover, the Trustee and debtor have not properly argued or presented this section 26–2–114 issue.

The court finds that the parties' Joint Stipulations will not support a conclusion that the debtor's $3,000 exemption in Life Insurance Policy No. 751279805A, claimed as exempt in bankruptcy under section 26–2–102, is ineffective as to executions that may have been issued by the judgment creditor, Alside. The Trustee's argument made in support of his Objection during the July 7, 1995 hearing need not be further addressed to the extent it was based on section 26–2–114.

## IV

■ The final issue to be addressed is whether the debtor's failure to disclose his assets in state court combined with his actions during his bankruptcy case support a finding that the debtor's exemptions were claimed in bad faith. The Trustee argues that the debtor failed to adequately, accurately, and fully disclose the existence of his assets. The debtor asserts in his brief that issues of bad faith "are more appropriately

---

court in *Pinner* adopted the finding made by the state court in *Household Finance Co. v. Ellis,* 107 N.C.App. 262, 419 S.E.2d 592 (1992), *aff'd,* 333 N.C. 785, 429 S.E.2d 716 (1993), that a waiver of exemptions is only effective during the ninety-day

period that follows the issuance of the execution, and held that after the ninety-day period, debtors have a "new opportunity to claim ... property as exempt" in bankruptcy court. *Pinner,* 146 B.R. at 660–61.

raised pursuant to 11 U.S.C. § 727 actions by the Trustee."

Some courts are reluctant to deny debtors the opportunity to claim exemptions unless there is a clear showing of bad faith, while others have denied improperly claimed exemptions in their entirety. *See In re Slentz,* 157 B.R. 418, 421 (Bankr.N.D.Ind.1993) (denying improper and excessive exemption in its entirety); *In re Gaudet,* 109 B.R. 548, 550 (Bankr.D.R.I.1989) ("reluctantly" allowing debtor's original claim of exemptions although bankruptcy schedules were filed eight months after commencement of case, and concluding that "absent a clear showing of bad faith or prejudice, we have no discretion to deny [the debtor] his right to said exemptions"); *see also In re Schwarb,* 150 B.R. 470, 472 (Bankr.M.D.Fla.1992) (holding that under Code § 522, the debtor's exemption may be denied where there is a finding of fraudulent bankruptcy planning). *But see Crews v. First Colony Life Ins. Co. (In re Barker),* 168 B.R. 773, 776–77 (Bankr.M.D.Fla.1994) (Jacksonville division rejecting the holding of the Tampa division's *Schwarb* opinion). One well-respected treatise on bankruptcy has concluded that "[t]he theory of many courts in denying such right has been that by the fraudulent conduct the debtor has forfeited the protection the state would otherwise give." 3 *Collier on Bankruptcy* ¶ 522.08 (15th ed. 1995). Despite these numerous standards applied to initial claims of exemption, courts generally agree that an amendment to exemptions is to be liberally allowed, unless a party in interest timely objects and provides sufficient proof of the debtor's "bad faith, concealment of property, or prejudice to creditors." *Stinson v. Williamson (In re Williamson),* 804 F.2d 1355, 1358 (5th Cir. 1986), *quoted in In re Fournier,* 169 B.R. 282, 283 (Bankr.D.Conn.1994); *see In re Yonikus,* 996 F.2d 866, 871–73 (7th Cir.1993) (denying supplemental exemption claim upon finding of bad faith based on debtor's fraudulent concealment of assets during bankruptcy case); *Lucius v. McLemore,* 741 F.2d 125, 127 (6th Cir.1984) (per curiam) ("Courts may still refuse to allow an amendment where the debtor has acted in bad faith or where property has been concealed."); *Ward v. Turner,* 176 B.R. 424, 427 (E.D.La.1994) (denying

amended exemptions based on finding that debtor withheld financial information, concealed assets, filed voluminous exemption schedules, and sought leave to claim exemptions under Texas law three years after claiming exemptions under Louisiana law); *see also Taylor v. Freeland & Kronz,* 503 U.S. 638, 642–46, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) (regarding thirty-day limitation period for objections, as established by Fed.R.Bankr.P. 4003(b) and 11 U.S.C.A. § 522(*l*) (West 1993)).

The Sixth Circuit has reiterated in numerous cases unrelated to a debtor's claim of exemptions that a determination of bad faith must be based on the totality of circumstances. *See, e.g., Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992). In applying the totality of circumstances test to issues of confirmation under Chapter 13, the Sixth Circuit has further stated "that a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge." *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033 (6th Cir.1988); *see Barrett,* 964 F.2d at 592. Deficiencies found in a debtor's exemption schedule, such as the inaccurate valuation of an exemption or failure to list the statutory basis for an exemption, may support a timely objection, but are insufficient to automatically render the "exemptions fraudulent and invalid." *See In re Brown,* 178 B.R. 722, 729–30 (Bankr. E.D.Tenn.1995). This court concludes that the debtor's prepetition and postpetition conduct must be considered in determining whether, under the totality of the circumstances, the debtor's exemptions were originally claimed or amended in bad faith.

The Trustee presented evidence on the bad faith issue during the July 7, 1995 hearing, which included testimony given by the debtor at the postjudgment discovery depositions taken in his state court action with Alside on January 21, 1992, and April 29, 1993, and at the debtor's § 341 meeting of creditors held on January 31, 1995, and testimony given by Kevin Kelley, a Senior Business Procedures Consultant with MetLife, at

a June 1, 1995 deposition. The questions asked during the postjudgment discovery deposition taken on January 21, 1992, included whether Mr. Clemmer had any personal property, any other property held by someone else, or any life insurance policies. The debtor was also asked during the deposition taken on April 29, 1993, whether he owned any property that was in someone else's possession or owned any life insurance policies. The existence of the MetLife annuity contracts and policies were never disclosed.

The debtor presented evidence to explain why he failed to disclose his assets to Alside and why he made a prepetition and postpetition attempt to obtain the funds from and cancel his annuity contracts. The debtor admits that he purchased the two annuity contracts and one of the insurance policies, but contends that he did not disclose their existence during the postjudgment discovery depositions based on the advice of MetLife. The other two insurance policies, No. 751279805A and No. 785032046A, were taken out by his former wife and the debtor only recently learned of their existence.[11]

In 1994, MetLife informed the debtor that Alside had learned of the existence of the annuity contracts. The debtor testified during the July 7, 1995 hearing that his friend, Walter Ridenour, or Mr. Ridenour's wife disclosed his annuity contracts to Alside. This coincides with the testimony given at the debtor's § 341 meeting where he was asked, "Well, how did he[, Walter Ridenour,] steal your money?" to which he answered, "By the numbers. That's one reason why we are

sitting here today. He is the one that told them where this retirement account was."

In early April 1994, the debtor withdrew the funds from the annuity contracts. Specifically, he withdrew $93,487.09 from Annuity Contract No. 007047166MA and an additional amount from Annuity Contract No. 007051979MA.[12] The debtor testified that this withdrawal was made in order to transfer the funds to an account earning a higher return. However, the checks sent by MetLife to the debtor were never cashed or deposited into another account. Instead, once the debtor learned of the adverse tax consequences associated with his decision, he requested that MetLife reinstate his annuity contracts by a letter dated May 23, 1994, and a facsimile request sent to MetLife in mid-1994. The debtor returned the checks to MetLife and his annuity contracts were reinstated in June 1994.

The debtor commenced his bankruptcy case on December 28, 1994, because, as the debtor testified, MetLife informed him that the funds from his annuity contracts would be sent in response to Alside's garnishment. By a request form dated January 29, 1995, more than a month after he commenced his bankruptcy case, and based, once again, on advice the debtor testified he received from MetLife, the debtor made a second attempt to withdraw the funds from the annuity contracts. After the request form was sent to MetLife, the debtor informed his attorney of his efforts and the request was subsequently cancelled.

11. During the July 7, 1995 hearing, the Trustee introduced a letter from MetLife to the debtor dated March 2, 1990, as evidence that the debtor knew of the existence of all three life insurance policies and of the value of the policies and two annuity contracts in 1990. The March 2, 1990 letter identifies and values the three life insurance policies and two annuity contracts presently owned by the debtor and one life insurance policy that is presumably no longer owned by the debtor. The letter also contains pertinent information regarding premiums, original purchase prices, and death benefits. However, the debtor testified at the July 7, 1995 hearing that prior to 1994 he had not "inquired as to other contracts with MetLife," and that the March 2, 1990 letter was addressed to his son's post office box. The debtor also testified that he first learned of the existence of Life Insurance Policy No.

751279805A and No. 785032046A after he filed his bankruptcy petition. The court concludes that the debtor did not know of Life Insurance Policy No. 751279805A and No. 785032046A until sometime shortly after he commenced his bankruptcy case.

12. The parties failed to provide the court with evidence regarding the amount of the withdrawal from Annuity Contract No. 007051979MA. Kevin Kelley, in discussing the April 1994 withdrawals during his deposition, only spoke of the cash-out of one annuity contract in the amount of $93,487.09. The debtor testified at the July 7, 1995 hearing that he received two checks, the amounts of which he did not recall, from MetLife in April 1994 and returned them in order to reinstate his contracts in June 1994.

The debtor also presented evidence regarding the disclosure of his assets on his bankruptcy schedules. As previously mentioned, the debtor disclosed an $84,000 asset related to his two MetLife annuity contracts on his original Schedule B, and claimed $84,000 of the value of these contracts as exempt on his original Schedule C. The debtor testified that he has not attempted to conceal his assets or their values during his bankruptcy case. His testimony, however, is not supported by the fact that he received in excess of $93,487.09 when he withdrew the funds from the two annuity contracts in April 1994 and therefore knew when he completed his original Schedules B and C that the value of his annuity contracts alone substantially exceeded $84,000. Moreover, the proof establishes that when he made the postpetition withdrawal request on January 29, 1995, the debtor knew that funds remained in his accounts; therefore, he knew that the value of his annuity contracts and insurance policies exceeded $84,000, the approximate amount sent by MetLife to the chancery court, which was later turned over to the Trustee, and reported on his bankruptcy schedules filed January 12, 1995.

Additional evidence presented at the July 7, 1995 hearing supports the debtor's contention that he has acted in good faith during his bankruptcy case. By letter dated January 5, 1995, the debtor's attorney, John P. Newton, Jr., requested MetLife to advise him "of the status of Mr. Clemmer's account including a current balance and a copy of his current policy." The Trustee was a carbon copy recipient of the January 5, 1995 letter. Furthermore, the Trustee testified at the July 7, 1995 hearing that he recalled numerous conversations with the debtor's attorney regarding the MetLife assets, that the debtor told him about one life insurance policy at the § 341 meeting held on January 21, 1995, and that the precise values of the contracts and policies were identified sometime after the debtor's § 341 meeting. The debtor's

testimony that he learned of the values of his contracts and policies sometime in March or April 1995 is consistent with that of the Trustee. The exact values of the debtor's MetLife annuity contracts and policies were ultimately disclosed and claimed as exempt when the debtor filed his Amendment to Schedules B and C on April 17, 1995.

The Trustee has not introduced sufficient evidence to support a finding that since the commencement of the debtor's bankruptcy case, the debtor acted in bad faith with regard to the disclosure, valuation, and exemption of his assets. Instead, the proof establishes that the debtor, through his attorney, requested MetLife to provide the information needed to fully, accurately, and adequately complete the debtor's bankruptcy schedules, and advised the Trustee of this request. Furthermore, the debtor informed the Trustee during his § 341 meeting that he owned a life insurance policy,[13] and amended his schedules to fully report his MetLife contracts and policies within four months after commencing his bankruptcy case.

Conversely, the proof supports the Trustee's contention that during the three years preceding the debtor's bankruptcy case, the debtor concealed his assets from Alside by failing to disclose his MetLife annuity contracts and one insurance policy, of which he had knowledge. His attempt to withdraw the funds from his annuity contracts in April 1994 evidences an intent to conceal these assets. The court, therefore, concludes that the debtor acted in bad faith prior to the filing of his bankruptcy petition on December 28, 1994, but finds that this prepetition concealment of assets is insufficient to support a finding that based on the totality of the circumstances the debtor's original or amended exemptions claimed in this bankruptcy case should be denied.

Furthermore, the Trustee has failed to provide the court with Tennessee statutory or case law to support a finding that exemptions should be denied based solely on the

13. The debtor was presumably referring to the one life insurance policy, No. 904455015UL, of which he had knowledge prior to the commencement of his bankruptcy case; however, the proof presented at the July 7, 1995 hearing is insufficient to support a finding of such fact. Regardless of which policy the debtor was referring to in the § 341 meeting, the court finds that the Trustee has presented insufficient evidence to prove that the debtor acted in bad faith with regard to the disclosure, valuation, and exemption of his assets in bankruptcy.

debtor's intentional concealment of assets from Alside in state court. The court's research has found that the only applicable authority pertinent to the debtor's section 26–2–102 exemption is contained in Tenn. Code Ann. § 26–2–115, which provides in material part:

> Upon application of the judgment creditor, the court may inquire into the truth and sufficiency of the debtor's claim for exemption, and may, where the debtor knowingly makes false claim for exemption, enter an order denying the debtor the right to make further claim for exemption as to that creditor's judgment.

Tenn.Code Ann. § 26–2–115(b) (1980). However, this statute only pertains to the truth and sufficiency of a debtor's claim of exemption of personal property under sections 26–2–102 and 26–2–114, rather than a debtor's bad faith actions that occurred prior to claiming the exemption.

With respect to the debtor's section 56–7–203 exemptions, the court's research has found that there is no procedure for claiming insurance policies and annuity contracts as exempt in Tennessee state courts. Instead, to the extent the policies and contracts meet the requirements of section 56–7–203, they are deemed automatically exempt in Tennessee.[14] This court, in the absence of Tennessee statutory or case authority to the contrary, cannot hold that a debtor's prepetition actions, however egregious, serve to defeat the interest of an innocent beneficiary, the debtor's son in this case, whose rights are protected under section 56–7–203.

The prepetition bad faith actions of the debtor are insufficient to support a conclusion that the debtor's exemptions, to which he is legally entitled under state law, should be denied. The debtor's two annuity contracts, two-thirds of Life Insurance Policy No. 904455015UL, and $3,000 of Life Insurance Policy No. 751279805A are protected from the claims of the debtor's creditors under Tennessee law. The court, therefore, finds that the debtor is entitled under Tennessee law to claim his two annuity contracts, two-thirds of Policy No. 904455015UL, and

$3,000 of Policy No. 751279805A as exempt in bankruptcy court, despite his prepetition efforts to intentionally conceal his assets from Alside.

The Trustee's Objection will be overruled except with respect to the entire cash surrender value of Policy No. 785032046A, the cash surrender value of Policy No. 751279805A to the extent it exceeds $3,000, and one-third of the cash surrender value of Policy No. 904455015UL. The debtor's exemptions will be denied with respect to the entire cash surrender value of Policy No. 785032046A, the cash surrender value of Policy No. 751279805A to the extent it exceeds $3,000, and one-third of the cash surrender value of Policy No. 904455015UL. An appropriate order will be entered.

---

**14.** Conversely, for purposes of bankruptcy, debtors must specifically claim their exemptions. 11

U.S.C.A. § 522 (West 1993 & Supp.1995); Fed. R.Bankr.P. 4003.