**In re Michael Warren LAWRENCE d/b/a Family Foot Care Centers; d/b/a Northgate Podiatry Center; d/b/a Tri–State Podiatry Center, Debtor.**

**Michael Warren LAWRENCE, Appellant,**

**v.**

**Richard P. JAHN, Trustee, Appellee.**

Bankruptcy No. 96–11249.
No. 1:97–cv–217.

United States District Court,
E.D. Tennessee,
at Chattanooga.

March 18, 1998.

---

Thomas E Ray, Shannon L Seckler, Ray & Associates, PC, Chattanooga, TN, for appellants.

Richard P Jahn, Jr, Jahn & Clem, Chattanooga, TN, U.S. Trustee.

## MEMORANDUM

EDGAR, District Judge.

This is a direct appeal from a final decision by the United States Bankruptcy Court. Appellant Michael Lawrence ("Lawrence") brings the appeal pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001. After reviewing the record, the Court concludes that the bankruptcy court's decision is correct, and it will be **AFFIRMED.** The appeal by Lawrence will be **DISMISSED.**

### I. Standard of Review

The bankruptcy court is the finder of fact. *In re Isaacman,* 26 F.3d 629, 631 (6th Cir. 1994); *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988). This Court is required to uphold the findings of fact made by the bankruptcy court unless those findings are determined to be clearly erroneous. The bankruptcy court's conclusions of law are reviewed *de novo* on appeal. *In re 255 Park Plaza Associates Ltd. Partnership,* 100 F.3d 1214, 1216 (6th Cir.1996); *Isaacman,* 26 F.3d at 631; *In re Zick,* 931 F.2d 1124, 1126 (6th Cir.1991); Bankruptcy Rule 8013. This Court has the authority to affirm, modify, or reverse the judgment of the bankruptcy court. This Court may also remand the case, if necessary, to the bankruptcy court for further proceedings. Bankruptcy Rule 8013.

1. Section 26–2–105 provides:
   "Earnings," "disposable earnings," "garnishment," defined.—As used in this part unless the context otherwise requires:
   (1) "Earnings" means the compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program;

### II. Facts

The essential facts are not in dispute. This Court agrees with the bankruptcy court's uncontested findings of fact. On March 11, 1996, Lawrence filed a Chapter 13 petition for bankruptcy. He subsequently converted the petition into a Chapter 7 bankruptcy pursuant to 11 U.S.C. § 1307. Lawrence was in private business as a self-employed licensed podiatrist, and he was a solo practitioner.

Prior to filing his bankruptcy petition, Lawrence accumulated $140,000 in unpaid patient accounts receivable. Lawrence claimed 75% of the $140,000 in accounts receivable, after taxes, as property exempt from bankruptcy pursuant to the Tennessee garnishment statute, TENN.CODE ANN. § 26–2–106. The Bankruptcy Trustee objected to this claimed exemption. Lawrence and the Trustee disagreed about the interpretation and application of Tenn.Code Ann. §§ 26–2–105 and 26–2–106. Lawrence contended that his accounts receivable are "disposable earnings" under § 26–2–105.[1] He also argued that the restriction on garnishment of disposable earnings in § 26–2–106(a)(1) constitutes an exemption of such earnings from bankruptcy within the purview of 11 U.S.C. § 522(b).

The Trustee argued in opposition that the accounts receivable of a self-employed podiatrist are not enough like wages or a salary paid by an employer to an employee to qualify as "earnings" within the meaning of TENN. CODE ANN. § 26–2–105(1). The Trustee further contended that TENN.CODE ANN. § 26–2–106 merely limits the amount of earnings which may be garnished outside of bankruptcy and does not purport to create an exemption of earnings from bankruptcy cognizable under 11 U.S.C. § 522(b).

(2) "Disposable earnings" means that part of the earnings of an individual remaining after the deduction from those earnings of any amounts required by law to be withheld;
(3) "Garnishment" means any legal or equitable procedure through which the earnings of an individual are required to be withheld for payment of any debt.

### III. Bankruptcy Court Opinion

In a well-reasoned opinion, Bankruptcy Court Judge John C. Cook ruled in the Trustee's favor and denied the claimed exemption. *In re Lawrence*, 205 B.R. 115 (Bankr.E.D.Tenn.1997). Judge Cook determined that Tenn.Code Ann. § 26–2–106 does not create an exemption for a debtor's earnings cognizable in bankruptcy. The bankruptcy court found it unnecessary to address the merits of the other question concerning whether the accounts receivable are "earnings" within the meaning of TENN.CODE ANN. § 26–2–105(1).[2]

### IV. Issues on Appeal

Lawrence raises two issues on appeal: (1) whether Tenn.Code Ann. § 26–2–106 provides an exemption for earnings in bankruptcy; and (2) whether Lawrence's accounts receivable concerning medical services rendered to his patients are "earnings" under TENN.CODE ANN. § 26–2–105(1).

### V. Analysis

The Court agrees with the bankruptcy court and concludes that TENN.CODE ANN. § 26–2–106 does not provide an exemption for earnings in bankruptcy proceedings. The first issue presented on appeal must be resolved in favor of the Trustee. The Court need not address the second issue concerning whether the accounts receivable are "earnings" under TENN.CODE ANN. § 26–2–105. The second issue is moot.

#### A. Bankruptcy Exemptions Under 11 U.S.C. § 522(b)

The Trustee bears the burden of proving that the exemption claimed by Lawrence is improper and should be disallowed. Bankruptcy Rule 4003(c). 11 U.S.C. § 541(a)(1) provides that the property of the Chapter 7 bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." The accumulated accounts receivable of debtor Lawrence are property of the Chapter 7 bankruptcy estate pursuant to § 541(a)(1).

11 U.S.C. § 522(b) provides that notwithstanding 11 U.S.C. § 541, an individual debtor may exempt from the bankruptcy estate the property listed in either § 522(b)(1) or (b)(2). Section 522(b) grants States the authority to "opt out" of the federal scheme of property exemptions enumerated in 11 U.S.C. § 522(d). *In re Storer*, 58 F.3d 1125 (6th Cir.), *cert. denied*, 516 U.S. 990, 116 S.Ct. 520, 133 L.Ed.2d 428 (1995); *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983). The State of Tennessee has the right to create and substitute its own scheme of property exemptions for purposes of bankruptcy. *Storer*, 58 F.3d 1125; *Rhodes*, 705 F.2d 159. The Sixth Circuit has recognized that the United States Congress and the Tennessee Legislature share concurrent authority to promulgate bankruptcy laws governing exemptions. *Storer*, 58 F.3d at 1129; *Rhodes*, 705 F.2d at 163. Tennessee is an "opt out" state under 11 U.S.C. § 522(b). Tennessee requires its citizens who file for bankruptcy to rely on the exemptions granted by Tennessee law rather than the exemptions listed in 11 U.S.C. § 522(d). TENN. CODE ANN. § 26–2–112, *In re Lucas*, 924 F.2d 597, 599 n. 4 (6th Cir.1991); *Rhodes*, 705 F.2d 159; *In re Clemmer*, 184 B.R. 935, 939–40 (Bankr.E.D.Tenn.1995).

Moreover, Tennessee is empowered by 11 U.S.C. § 522(b) to create whatever property exemptions in bankruptcy it may elect, even if the state exemptions are less inclusive or more restrictive than the exemptions afforded debtors by the federal exemption scheme in 11 U.S.C. § 522(d). *Storer*, 58 F.3d at 1128–29; *Rhodes*, 705 F.2d at 163–64. Likewise, Tennessee may enact different exemptions which would possibly conflict with the federal exemptions reflected in § 522(d). *Storer*, 58 F.3d at 1128–29; *Rhodes*, 705 F.2d at 164; *In re Mc-Manus*, 681 F.2d 353, 357 n. 7 (5th Cir. 1982). As the Seventh Circuit stated in *Clark v. Chicago Mun. Emp. Credit Union*, 119 F.3d 540, 544 (7th Cir.1997), federal case law reflects that the "fresh start" for debtors policy in the BANKRUPTCY CODE does not

---

2. Judge Cook's opinion in *Lawrence* has been cited with approval and followed by at least one other bankruptcy court. *In re Siegel*, 214 B.R. 329 (Bankr.W.D.Tenn.1997).

require states that have opted out of the federal exemptions to provide state exemptions comparable, concomitant or corresponding to the federal exemptions in 11 U.S.C. § 522(d). Consequently, the State of Tennessee may prescribe its own requirements for exemptions of particular property from bankruptcy which may "either circumscribe or enlarge the list of exempt property." *McManus,* 681 F.2d at 355–56 (quoted with approval in *Rhodes,* 705 F.2d at 163).

■ To resolve the first issue raised by Lawrence on appeal, the Court must look to both federal and Tennessee law. The Court has the task of interpreting 11 U.S.C. § 522(b) and TENN.CODE ANN. § 26–2–106. As Judge Cook explains in his opinion, § 522(b) provides that an individual debtor may exempt from the bankruptcy estate such property that is "exempt" under state law. Although Tennessee is authorized by §. 522(b) to devise its own list of property that Tennessee considers exempt from the creditors in bankruptcy, the question of whether certain property is "exempt" within the meaning of § 522(b) of the BANKRUPTCY CODE is ultimately one of federal law. *Cf. Patterson v. Shumate,* 504 U.S. 753, 757–59, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). As a general rule, words and phrases contained in federal statutes are defined by reference to federal law. This is particularly true where the federal statute such as 11 U.S.C. § 522(b) of the BANKRUPTCY CODE is intended to have uniform nationwide application. *In re Hodgson,* 167 B.R. 945, 949–50 (D.Kan.1994). The term "exempt" as used in § 522(b) must be given the proper meaning and application intended by Congress.

■ State exemption statutes are applicable to cases under the BANKRUPTCY CODE to no greater or lesser extent than that authorized by Congress in § 522(b). *In re Butcher,* 189 B.R. 357, 371–72 (Bankr.D.Md.1995), *aff'd,* 125 F.3d 238 (4th Cir.1997). The laws of the State of Tennessee must be applied in a manner consistent with the goals and policies of the federal BANKRUPTCY CODE. When a conflict occurs between Tennessee law and the federal bankruptcy statutes, bankruptcy policy prevails. *In re McCafferty,* 96 F.3d 192, 196 (6th Cir.1996); *In re Omegas Group, Inc.,* 16 F.3d 1443, 1450–51 (6th Cir.1994).

When interpreting 11 U.S.C. § 522(b), we must first consider its text. *United States v. Alvarez–Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994); *Floyd v. U.S. Postal Service,* 105 F.3d 274, 276 (6th Cir.1997). Courts are required to interpret and enforce statutes according to the plain meaning of their language as long as the language is unambiguous. *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *United States v. Ron Pair Enters.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989); *In re Toti,* 24 F.3d 806, 809 (6th Cir.), *cert. denied,* 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). If the language of a statute is unambiguous and susceptible of only one objectively reasonable interpretation, absent a clearly expressed legislative intent to the contrary, the plain language is ordinarily conclusive. *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993); *Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119, 1122, 122 L.Ed.2d 457 (1993); *Floyd,* 105 F.3d at 276. Where statutory language is not expressly defined, it will be given its common meaning. *Burlington N.R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987); *Toti,* 24 F.3d at 809. When interpreting a statute, courts look not merely to a particular clause in which general words may be used, but will also consider the statute as a whole and the object and policy of the law, as indicated by its various provisions. The courts construe statutes so as to carry into execution the intent and will of the legislature. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

The meaning of the term "exempt" in 11 U.S.C. § 522(b), as intended by Congress, is not ambiguous especially when considered in the context that one of the primary purposes of the BANKRUPTCY CODE is to give debtor Lawrence a fresh start and grant him relief from the weight of oppressive indebtedness. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *In re Fegeley,*

118 F.3d 979, 982 (3rd Cir.1997); *Toti*, 24 F.3d at 809; *Sanders Confectionery Products v. Heller Financial*, 973 F.2d 474, 481 (6th Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993), (BANKRUPTCY CODE contains a strong preference for final resolution of all creditors' claims involving the debtor, largely in order for the debtor to obtain a fresh start); *In re Krohn*, 886 F.2d 123, 125 (6th Cir.1989); *see also Toth v. Michigan State Housing Development Auth.*, 136 F.3d 477 (6th Cir.1998). A fresh start for debtors in bankruptcy is accomplished through discharge of all or a portion of their debts. Chapter 7 of the BANKRUPTCY CODE allows the discharge of Lawrence's debts in exchange for liquidation of his nonexempt property and assets for the benefit of his creditors. *In re Arango*, 992 F.2d 611, 613 (6th Cir.); *Krohn*, 886 F.2d at 125. When a debtor files under Chapter 7, he is generally granted a complete discharge from debts that arose prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(b); *Fegeley*, 118 F.3d at 982; *Toti*, 24 F.3d at 808.

Bankruptcy Court Judge Cook correctly reasoned that, in bankruptcy, the debtor's property that is exempt is the property the debtor can forever sequester to himself and place completely beyond the reach of his creditors. Exempt property is subtracted from the bankruptcy estate and not distributed to creditors. Exemptions are enacted to ensure that a debtor coming out of the bankruptcy process retains sufficient property to obtain a fresh start and to provide the debtor with the basic necessities of life so that he will not be left entirely destitute by his creditors. *Arango*, 992 F.2d at 613; *Butcher*, 189 B.R. at 369; *In re Locarno*, 23 B.R. 622, 629 (Bankr.D.Md.1982). Once a debtor has been discharged in bankruptcy, the creditors are thereafter prohibited from attaching, seizing and executing on the debtor's exempt property. 11 U.S.C. § 524(a). When Congress enacted § 522(b) permitting debtors in bankruptcy to utilize property exemptions granted under state law as alternatives to the federal exemptions listed in § 522(d), Congress had in mind the type of exemptions where property is completely and permanently exempt thereby preventing creditors

from ever threatening the exempt property with attachment, seizure and execution. In other words, the essence and purpose of a bankruptcy exemption is the sequestration of particular types of a debtor's property by placing the exempt property completely beyond the reach of creditors for as long as the property maintains its exempt character and form. This basic definition of a bankruptcy exemption is necessary and proper to fulfill a primary purpose of the BANKRUPTCY CODE, namely to give debtors a fresh start.

### B. TENN.CODE ANN. § 26–2–106 Is Not An Exemption In Bankruptcy

Various Tennessee statutes provide for particular items of a debtor's property to be completely exempt from all judicial process initiated by creditors to collect debts. TENN. CODE ANN. §§ 26–2–102, 26–2–103, 26–2–104, 26–2–110, 26–2–111. These statutes create exemptions cognizable in bankruptcy under 11 U.S.C. § 522(b). Whenever the Tennessee Legislature has sought to create a bankruptcy exemption, it has inserted key language into the Tennessee statutes stating that the property shall either be "exempt from execution, seizure or attachment" (§§ 26–2–102, 26–2–103, 26–2–111) or, if the property may be in the possession of a third person, "exempt from execution, attachment or garnishment" (§§ 26–2–104, 26–2–110). This broad language expressly prohibits creditors from ever subjecting the debtor's exempted property to any judicial process for the collection of debts. *Cf. Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (Disability insurance benefits under the Social Security Act were held completely exempt from creditors by virtue of all-inclusive language in 42 U.S.C. § 407 prohibiting execution, levy, attachment, garnishment, or other legal process).

The Tennessee garnishment statute at issue here, TENN.CODE ANN. § 26–2–106, is fundamentally different from these other Tennessee exemption statutes. Section 26–2–106 does not contain similar broad language that completely and permanently exempts a debtor's earnings from the reach of

creditors through judicial process. Section 26–2–106 provides:

**Maximum amount of disposable earnings exempt from garnishment—Garnishment costs.** (a) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:

(1) Twenty-five percent (25%) of his disposable earnings for that week; or

(2) The amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage at the time the earnings for any pay period become due and payable, whichever is less.

(b) In the case of earnings for any pay period other than a week, an equivalent amount shall be in effect.

(c) The debtor shall pay the costs of any and all garnishments on each debt on which suit is brought. Said costs shall not include commissions for sheriffs on any garnishment after the original garnishment and the total amount of any such costs shall not exceed three dollars ($3.00) for any garnishment after the original.

Section 26–2–106(a) merely limits to 25% the amount of disposable earnings that may be subjected to garnishment while the earnings are in the possession of a third person. Section 26–2–106 does not expressly prohibit creditors from the attachment, seizure and execution on earnings which are in the debtor's possession. The statute is silent about whether the remaining 75% of the earnings are exempt from creditors once the earnings are paid over and distributed to the debtor. There are no reported decisions by the state courts of Tennessee which discuss this specific question of law and interpret § 26–2–106 as either allowing or not allowing creditors to attach and execute on earnings in the debtor's possession.

■ The bankruptcy court below correctly reasons that if TENN.CODE ANN. § 26–2–106 does not provide for the complete sequestration of the debtor's earnings from creditors and instead merely limits the amount of earnings a creditor can obtain through the garnishment of a third-party garnishee, Congress does not intend in the BANKRUPTCY CODE for § 26–2–106 to be recognized and applied as an exemption for disposable earnings in bankruptcy proceedings. This Court agrees with the bankruptcy court's analysis. When Congress enacted 11 U.S.C. § 522(b), it intended to provide for exemptions of property from bankruptcy where the state statute fully, permanently and unequivocally exempts the debtor's property from the reach of his creditors. If creditors are permitted under TENN.CODE ANN. § 26–2–106 to attach and execute on earnings in the debtor's possession where the earnings are no longer possessed by a third-party garnishee, then such earnings cannot be "exempt" property in bankruptcy pursuant to 11 U.S.C. § 522(b).

■ This Court also agrees with the bankruptcy court's conclusion that when earnings are paid and distributed to a debtor in Tennessee, the earnings do not retain their exempt status in the debtor's hands and bank accounts under TENN.CODE ANN. § 26–2–106. Once earnings come into the debtor's possession, creditors have the right under Tennessee law to attach and execute on the earnings to collect debts except to the extent that another statutory exemption may apply. The Court reaches this conclusion based on the following reasons.

First, there is no Tennessee statute that provides a general exemption for earnings and wages paid to a debtor. In interpreting a Tennessee statute, the fundamental rule of statutory construction is to ascertain the legislative purpose and intent as expressed in the statute. The legislative intent is derived primarily from the natural, ordinary meaning of the plain language contained in the statute when read in context within the statute as a whole. The Court must not give the statutory language any forced or subtle construction that either unduly restricts or extends the coverage of the statute beyond its intended scope. *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn.1997); *Perry v. Sentry Ins. Co.*, 938 S.W.2d 404, 406 (Tenn.1996); *Tuggle v. Allright Parking Systems, Inc.*, 922 S.W.2d 105, 107 (Tenn.1996); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995). A statute is ambiguous if it is capable of more than one reasonable

meaning. *Evans v. Young*, 201 Tenn. 368, 381, 299 S.W.2d 218, 224 (1957); *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn.App.1995).

TENN.CODE ANN. § 26–2–106 is not ambiguous. The plain language in § 26–2–106 provides for disposable earnings to be exempt from garnishment to a limited degree only when the earnings are in the possession of a third-party garnishee. Section 26–2–106 does not provide for any exemption when the disposable earnings are in the debtor's hands and bank accounts.

Furthermore, even if we assume *arguendo* that § 26–2–106 is ambiguous, it is a well established rule of statutory construction in Tennessee that statutes *in pari materia* — those relating to the same subject matter or having a common purpose—are to be construed together. *Petition of Gant*, 937 S.W.2d 842, 845 (Tenn.1996); *Owens*, 908 S.W.2d at 926; *State v. Blouvett*, 904 S.W.2d 111, 113 (Tenn.1995); *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn.1994); *Belle–Aire Village, Inc. v. Ghorley*, 574 S.W.2d 723, 726 (Tenn.1978). The construction of an ambiguous statute may be aided by considering the words and legislative intent indicated by the language of another related statute on the same subject. *Gant*, 937 S.W.2d at 845; *Blouvett*, 904 S.W.2d at 113; *Roseman*, 890 S.W.2d at 29; *Wilson v. Johnson Co.*, 879 S.W.2d 807, 809 (Tenn.1994); *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 2 (Tenn.1986).

TENN.CODE ANN. §§ 26–2–102 [3] and 26–2–106 are statutes *in pari materia* relating to the common subject matter of exemptions of debtors' personal property, and these statutes should be construed together and harmonized. Section 26–2–102 allows an exemption for personal property in the debtor's possession including his bank accounts. When §§ 26–2–102 and 26–2–106 are construed together, the Court concludes that once disposable earnings are received and

possessed by a debtor and the earnings are no longer governed by the exemption from garnishment in § 26–2–106, then the earnings possessed by the debtor become subject to the exemption in § 26–2–102.

Second, if the Tennessee Legislature had intended for TENN.CODE ANN. § 26–2–106 to make earnings paid to a debtor completely and permanently exempt from the reach of his creditors for bankruptcy purposes, it would have so provided. The Tennessee Legislature knows how to exempt money in the hands of debtors when it chooses to do so. For example, TENN.CODE ANN. § 26–2–104(a) provides that "[a]ll moneys received by a resident of the state, as pension from the state of Tennessee, or any subdivision or municipality thereof, before receipt, *or while in the resident's hands or upon deposit in the bank*, shall be exempt from execution, attachment or garnishment other than" an assignment for child support pursuant to TENN.CODE ANN. § 36–5–501. (Emphasis supplied). Section 26–2–104(a) concerns the distribution of pension funds to debtors which is virtually identical to situations where debtors receive unpaid earnings. Section 26–2–104(a) expressly covers the time periods before and after debtors receive pension funds, and it specifies that pension moneys in the hands and bank accounts of debtors are generally exempt from the reach of creditors through all means of attachment and execution. The Tennessee Legislature could have inserted language in § 26–2–106 similar to § 26–2–104(a) extending the garnishment exemption to disposable earnings in the hands and bank accounts of debtors but it has not done so.

An excellent comparison which illustrates the point is found in Florida. The Florida Legislature in 1985 amended its garnishment exemption statute, FLA.STAT. § 222.11, to add language expressly exempting wages received by debtors and deposited into debtors'

---

**3.** TENN.CODE ANN § 26–2–102 provides:

**Personal property selectively exempt from seizure.**—Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to his vocation or pursuit or to the ownership of his abode. Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest.

bank accounts thereby establishing an exemption cognizable in bankruptcy. *See In re Ryzner,* 208 B.R. 568, 569 (Bankr.M.D.Fla. 1997); *Matter of Welch,* 115 B.R. 374 (Bankr. M.D.Fla.1990). Prior to the 1985 amendment of the Florida garnishment statute, the Florida courts had held that the statute did not extend the garnishment exemption to earnings directly deposited by an employer into a debtor-employee's bank account. *Ellis Sarasota Bank & Trust Co. v. Nevins,* 409 So.2d 178, 179 (Fla.App.1982); *Holmes v. Blazer Financial Services, Inc.,* 369 So.2d 987 (Fla.App.1979); *Hertz v. Fisher,* 339 So.2d 1148 (Fla.App.1976).

Another example directly on point is TENN. CODE ANN. § 26–2–111. Section 26–2–111 provides that in addition to the personal property exempt under § 26–2–102 quoted *supra,* certain other types of specified property "shall be exempt from execution, seizure or attachment *in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee. . . . "* (Emphasis supplied). The property exempt under § 26–2–111 includes social security benefits, unemployment compensation, veteran's benefits, and a disability benefit or pension that vests as a result of disability.

The existence of §§ 26–2–102, 26–2–104(a) and 26–2–111 demonstrates that the Tennessee Legislature is capable of expressing its intentions in unequivocal language and drafting statutes that clearly provide bankruptcy exemptions for funds received by and in the possession of debtors. However, TENN.CODE ANN. § 26–2–106 by stark contrast does not make any provision whatsoever for disposable earnings in the possession of debtors to be exempt from creditors. *Cf. Usery v. First National Bank of Arizona,* 586 F.2d 107, 110–11 (9th Cir.1978). After comparing § 26–2–106 with §§ 26–2–102, 26–2–104 and 26–2–111, this Court concludes that Tennessee does not intend for § 26–2–106 to exempt in bankruptcy disposable earnings after the earnings have been distributed and paid to debtors. Once earnings are received by and come into the possession of debtors, § 26–2–106 is not designed to exempt such earnings from the reach of creditors. Accordingly, § 26–2–106 does not create the kind of state

exemption that Congress intends to be utilized in bankruptcy under 11 U.S.C. § 522(b).

Third, TENN.CODE ANN. §§ 26–2–105 and 26–2–106 were enacted subsequent to Subchapter II of the federal Consumer Credit Protection Act ("CCPA"), 15 U.S.C. §§ 1671–1677. Congress enacted Subchapter II of the CCPA in 1968 for the purpose of imposing nationwide restrictions on garnishments to protect debtors from the predatory lending practices of some credit institutions. *Kokoszka,* 417 U.S. at 650–51, 94 S.Ct. at 2435–36; 15 U.S.C. § 1671. The CCPA, which became effective on July 1, 1970, preempts any less restrictive state garnishment statutes. 15 U.S.C. § 1673(c). The CCPA rendered the then-existing Tennessee garnishment laws obsolete. The State of Tennessee subsequently enacted its own version of the CCPA in 1978 and adopted the operative provisions of the CCPA almost verbatim. The language in TENN.CODE ANN. § 26–2–105 is taken directly from 15 U.S.C. § 1672. The text of TENN.CODE ANN. § 26–2–106(a) and (b) is copied directly from 15 U.S.C. § 1673(a). Thus, Tennessee modeled TENN.CODE ANN. §§ 26–2–105 and 26–2–106 after the CCPA.

Tennessee did not enact TENN.CODE ANN. §§ 26–2–105 and 26–2–106 in a vacuum. It is significant that §§ 26–2–105 and 26–2–106 were enacted in Tennessee in 1978, some four years after the Supreme Court's decision in *Kokoszka,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374. The Tennessee Legislature either knew or should have known about *Kokoszka* when it adopted §§ 26–2–105 and 26–2–106. The Tennessee Legislature is presumed to know the state of the law at the time it passes legislation. *Riggs,* 941 S.W.2d at 54; *Holder v. Tennessee Judicial Selection,* 937 S.W.2d 877, 883 (Tenn.1996); *Owens,* 908 S.W.2d at 926; *Wilson,* 879 S.W.2d at 810; *Neff,* 704 S.W.2d at 5.

In *Kokoszka,* the Supreme Court addressed two questions: (1) whether an income tax refund is "property" under § 70a(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5); and (2) assuming that all or part of the income tax refund is property which passes to the bankruptcy trustee, whether the CCPA's limitation on the garnishment of

earnings or wages, 15 U.S.C. § 1673, serves to exempt 75% of the tax refund from the jurisdiction of the bankruptcy trustee. *Id.* at 642–43, 94 S.Ct. at 2431–32. *Kokoszka* holds that the CCPA does not restrict the right of a bankruptcy trustee to treat an income tax refund as nonexempt property of the bankruptcy estate. The *Kokoszka* Court examined the legislative history of the CCPA and determined that while the CCPA had been enacted against the background of the BANKRUPTCY CODE, the CCPA was not intended by Congress to alter the purpose of the BANKRUPTCY CODE, *i.e.*, to assemble all of the debtor's assets after the bankruptcy petition is filed for the benefit of his creditors. The concern of Congress in enacting the CCPA was not the administration of a bankrupt's estate but rather the prevention of bankruptcy in the first place. *Id.* at 650–51, 94 S.Ct. at 2436. If bankruptcy should occur, despite the protection afforded to consumers by the CCPA, Congress intends that the debtor's protection from creditors and remedy remains under the BANKRUPTCY CODE. *Id.* at 651, 94 S.Ct. at 2436. The CCPA is designed to operate prior to bankruptcy and not within bankruptcy as some sort of an exemption. *Kokoszka* holds that the restrictions on garnishment of disposable earnings in 15 U.S.C. § 1673 of the CCPA do not constitute an exemption of such earnings cognizable in bankruptcy.

*Kokoszka* is most instructive and has important implications in the instant case concerning this Court's construction and interpretation of TENN.CODE ANN. § 26–2–106, the Tennessee counterpart to 15 U.S.C. § 1673. Logic dictates that if the Tennessee Legislature, in the aftermath of *Kokoszka,* had intended for the garnishment restrictions in § 26–2–106 to also serve as an exemption for debtors' disposable earnings in bankruptcy, then the Tennessee Legislature would have clearly stated such an intent in the language of § 26–2–106 when it enacted this statute in 1978. That the Tennessee Legislature did not use any new, special or different language in § 26–2–106 to expressly create a bankruptcy exemption for disposable earnings in the possession of debtors despite the Supreme Court's ruling in *Kokoszka,* is persuasive in establishing that § 26–2–106 is not intended by Tennessee to be an exemption cognizable in bankruptcy.

The Tennessee Legislature enacted TENN. CODE ANN. § 26–2–106 utilizing the very same language from 15 U.S.C. § 1673 of the CCPA as construed and explained by the Supreme Court in *Kokoszka.* The only interpretation this Court can reasonably attribute to the actions of the Tennessee Legislature is that Tennessee accepts *Kokoszka* and does not intend for § 26–2–106 to create a bankruptcy exemption. Since Tennessee closely modeled § 26–2–106 after 15 U.S.C. § 1673 using almost the same language verbatim, Tennessee has shown that it intends to have § 26–2–106 interpreted and applied consistently with 15 U.S.C. § 1673 and *Kokoszka.*

Fourth, various other federal and state courts that have considered the question whether the CCPA extends the garnishment exemption in 15 U.S.C. § 1673 to disposable earnings in the hands and bank accounts of debtors have consistently said it does not. *Usery v. First National Bank,* 586 F.2d 107, 110 (9th Cir.1978); *Dunlop v. First National Bank,* 399 F.Supp. 855, 857 (D.Ariz.1975); *Frazer, Ryan, Goldberg, Keyt & Lawless v. Smith,* 184 Ariz. 181, 907 P.2d 1384, 1388 and n. 5 (App.1995); *Edwards v. Henry,* 97 Mich. App. 173, 293 N.W.2d 756, 757–58 (1980); *John O. Melby & Co. Bank v. Anderson,* 88 Wis.2d 252, 276 N.W.2d 274, 276–78 (1979). In *Frazer,* 907 P.2d at 1388, the Arizona Court of Appeals held that an Arizona garnishment exemption statute modeled after 15 U.S.C. §§ 1672–1673 did not extend the exemption to earnings deposited into a debtor's bank account.

There are certain types of exempt moneys and government benefits which retain their exempt status even after being transferred or deposited into a debtor-employee's bank account, depending of course upon the particular language used in the applicable exemption statute. In *Porter v. Aetna Casualty & Surety Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), the Supreme Court held that veteran's benefits remain exempt from judicial process to collect debts even when the veteran's benefits are deposited into a debtor's federal savings and loan association

account. However, the particular federal statute at issue in *Porter,* former 38 U.S.C. § 3101(a), provided that veteran's benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." A similar result was reached in *Philpott,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608, wherein the Supreme Court held that social security disability insurance benefits deposited into a bank account are exempt from creditors by virtue of 42 U.S.C. § 407(a) which provides that none of the social security benefits paid or payable "shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." *See also Huskey v. Assmann,* 1990 WL 55853 (Tenn.App. May 3, 1990) (unpublished); *Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.,* 28 Ohio St.3d 441, 443–45, 504 N.E.2d 1100, 1102–03 (1986) (Ohio garnishment exemption statute).

The federal statutes reviewed by the Supreme Court in *Porter* and *Philpott* are distinguishable from 15 U.S.C. § 1673 and its Tennessee counterpart, Tenn.Code Ann. § 26–2–106. *Usery,* 586 F.2d at 111. When it enacted the CCPA, Congress choose not to include in 15 U.S.C. § 1673 any similar language restricting the attachment, seizure and execution on earnings once they have been distributed to and received by the debtor. This Court, therefore, concludes that the garnishment exemption in 15 U.S.C. § 1673 does not extend to disposable earnings received and possessed by debtors. Once earnings are disbursed to the debtor by a third-party garnishee, the earnings lose their status as exempt property pursuant to § 1673. This same analysis applies with equal force to the interpretation of Tenn.Code Ann. § 26–2–106 which is modeled after 15 U.S.C. § 1673. There is nothing in the language of § 26–2–106 and the Tennessee exemption scheme that requires a different result. *Cf. Daugherty,* 504 N.E.2d at 1102–03.

Lawrence contends 15 U.S.C. § 1673 and *Kokoszka* should not be used to interpret Tenn.Code Ann. § 26–2–106. He argues that the legislative intent and purpose of Congress in passing the CCPA is different from the intent behind the Tennessee Legislature's decision to enact § 26–2–106. Lawrence asserts that the Tennessee Legislature intends for § 26–2–106 to serve as an exemption in bankruptcy and such intent is implied or can be inferred from the placement of § 26–2–106 within Tennessee's scheme of statutory exemptions. He points out that § 26–2–106 is located in Title 26, Chapter 2, Part 1 of Tennessee Code Annotated, which is entitled "Exemptions." Furthermore, Lawrence says that when Tennessee decided to opt out of the federal bankruptcy exemptions pursuant to 11 U.S.C. § 522(b), it adopted Tenn.Code Ann. § 26–2–112 which states that the property exemptions provided in Title 26, Chapter 2, Part 1 are declared adequate and the citizens of Tennessee are not authorized to claim as exempt the property listed in 11 U.S.C. § 522(d). It is argued by Lawrence that the Tennessee Legislature must intend for § 26–2–106 to serve as an exemption in bankruptcy or else this statute would have been placed in a different part of the Tennessee Code. Lawrence says the bankruptcy court erred by allowing the legislative intent of the CCPA to dominate its interpretation of § 26–2–106 even though Congress gave Tennessee the right to opt out of the federal bankruptcy exemptions.

Part of the argument presented by Lawrence is not entirely unreasonable. The title of a statute or section of statutes can sometimes aid in resolving an ambiguity in the legislation's text. *INS v. Center for Immigrant's Rights,* 502 U.S. 183, 189, 112 S.Ct. 551, 555–56, 116 L.Ed.2d 546 (1991); *Mead Corp. v. Tilley,* 490 U.S. 714, 723, 109 S.Ct. 2156, 2162–63, 104 L.Ed.2d 796 (1989). The placement of § 26–2–106 within Title 26, Chapter 2, Part 1 of the Tennessee Code which contains various bankruptcy exemptions is a matter that should be taken into consideration. However, for the reasons explained *infra,* Lawrence's argument fails. After considering the plain language of § 26–2–106 and the history and circumstances surrounding its enactment subsequent to 15 U.S.C. § 1673 and *Kokoszka,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, this Court concludes that Tennessee does not intend for

§ 26–2–106 to be an exemption in bankruptcy.

Although § 26–2–106 falls within Title 26, Chapter 2, Part 1 of TENNESSEE CODE ANNOTATED, which bears the general heading of "Exemptions," this does not *per se* constitute irrefutable proof that the Tennessee Legislature intends for § 26–2–106 to be an exemption cognizable in bankruptcy. There can be different types of property exemptions which may or may not be bankruptcy exemptions. Not every exemption provided under Tennessee law must necessarily be construed as an exemption in bankruptcy. Section 26–2–106 can be interpreted as being only an exemption for purposes of garnishment and not bankruptcy. The title or caption of § 26–2–106 reads as follows: "Maximum amount of disposable earnings exempt from garnishment—Garnishment costs." There is nothing in the language of § 26–2–106 and its title to indicate that it is anything more than an exemption from garnishment.

Moreover, even if we assume *arguendo* that the Tennessee Legislature intends for § 26–2–106 to be an exemption in bankruptcy by virtue of TENN.CODE ANN. § 26–2–112, this Court holds that § 26–2–106 in its present form is deficient to fulfill this purpose. Section 26–2–106 does not create the kind of complete exemption of property from creditors that Congress intends to have recognized and enforced in bankruptcy proceedings pursuant to 11 U.S.C. § 522(b). Section 26–2–106 does not exempt earnings from creditors once the earnings are in the debtor's possession.

In an effort to show that Tennessee intends for § 26–2–106 to be a bankruptcy exemption, Lawrence points to TENN.CODE ANN. § 26–2–111, the Tennessee "catch-all" provision for personal property exemptions. Sections 26–2–106 and 26–2–111 are statutes *in pari materia* and should be construed together. Section 26–2–111(1) provides in relevant part:

In addition to the property exempt under § 26–2–102, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:

. . . .

(D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service. . . .

The Court does not interpret § 26–2–111(1)(D) as a clear expression of intent by the Tennessee Legislature to make § 26–2–106 an exemption for disposable earnings cognizable in bankruptcy. Rather, the Court construes the plain language of § 26–2–111(1)(D) as only creating a bankruptcy exemption for funds in the hands or possession of Tennessee debtors where the funds are derived from stock bonus, pension, profitsharing, annuity, or similar plans or contracts. The reference in § 26–2–111(1)(D) to § 26–2–106 merely places a limit of 75% on the amount of such funds that are exempt. What is most significant about these two statutes when they are compared and construed together is that § 26–2–111 expressly provides for certain personal property in the hands or possession of a debtor to be completely exempt from creditors while § 26–2–106 does not create the same type of exemption for earnings in a debtors' hands or possession. Lawrence simply cannot bootstrap his way into a bankruptcy exemption for earnings based on § 26–2–111(1)(D).

Lawrence next argues the bankruptcy court erred by discounting judicial decisions that have interpreted the garnishment statutes of other states and allowed them to be exemptions in bankruptcy. Because this is a case of first impression in Tennessee and there are currently no reported cases from the Tennessee courts directly on point construing TENN.CODE ANN. § 26–2–106 as either permitting or prohibiting a creditor to attach and execute on earnings in the debtor's possession, Lawrence urges this Court to follow several analogous opinions from other states. This Court must of course focus its attention on interpreting the Tennessee statutes and exemptions rather than those of some other state.

The Court has reviewed the cases from other states cited and discussed by Lawrence and Bankruptcy Court Judge Cook. These opinions from other states have mixed results. A portion of the cases may be read as supporting Lawrence's position, but some cases are also in accord with this Court's analysis and interpretation of TENN.CODE ANN. § 26–2–106. The reported caselaw from other states is not uniformly in Lawrence's favor.

There are a few cases interpreting state garnishment exemption statutes from Nevada, Ohio, Colorado, Iowa and Missouri which lend varying degrees of support to Lawrence's position that earnings and wages exempt from garnishment under a state statute retain their exempt status when the earnings are deposited into a debtor's bank accounts as long as the funds deposited are traceable to those exempt earnings. *In re Norris*, 203 B.R. 463 (Bankr.D.Nev.1996); *In re Arnold*, 193 B.R. 897 (Bankr.W.D.Mo.1996); *In re Caslavka*, 179 B.R. 141, 147 (Bankr.N.D.Iowa 1995); *In re Kobernusz*, 160 B.R. 844 (D.Colo.1993); *In re Smith*, 124 B.R. 787, 789 (Bankr.W.D.Mo.1991); *In re Sanders*, 69 B.R. 569 (Bankr.E.D.Mo.1987); *MidAmerica Savings Bank v. Miehe*, 438 N.W.2d 837, 839 (Iowa 1989); *Daugherty*, 28 Ohio St.3d at 441, 504 N.E.2d at 1100. The cases most favorable to Lawrence come from Nevada, Iowa and Missouri. The Court also notes that two other bankruptcy courts have similarly held that Utah and Maryland garnishment exemption statutes allow debtors to exempt from bankruptcy wages that accrue but are unpaid at the time of bankruptcy. *In re Stewart*, 32 B.R. 132 (Bankr.D.Utah 1983); *In re Smith*, 23 B.R. 708 (Bankr.D.Md.1982). This Court sitting in Tennessee does not find any of these cases from other States to be persuasive in ascertaining the proper construction and application of TENN.CODE ANN. § 26–2–106.

*Kobernusz*, 160 B.R. at 847, is of minimal value to Lawrence as legal precedent. The Colorado bankruptcy court in *Kobernusz* considered an exemption claim for earnings under the Colorado garnishment exemption statute and it was required to follow an old opinion rendered by the Colorado Supreme Court in *Rutter v. Shumway*, 16 Colo. 95, 26 P. 321 (1891). *Rutter* held that earnings do not lose their exempt identity under Colorado law when deposited into a debtor's bank account. The *Kobernusz* court, however, indicated it would have reached a different conclusion and relied on *Usery*, 586 F.2d 107, as compelling precedent if the case had hinged instead on an interpretation of the CCPA. In the present case, there is no precedent in the Tennessee caselaw comparable to the Colorado case of *Rutter* to guide this Court in its interpretation of TENN.CODE ANN. § 26–2–106. Moreover, this Court does consider the CCPA, 15 U.S.C. §§ 1672–1673, to be material to understanding the intent and purpose of § 26–2–106 because the Tennessee statute is modeled after and does not substantially deviate from 15 U.S.C. § 1672–1673.

This Court's interpretation of the Tennessee garnishment exemption statute, § 26–2–106, is entirely consistent and in accord with the opinion of the Arizona Court of Appeals in *Frazer*, 184 Ariz. 181, 907 P.2d 1384, 1388, interpreting a similarly worded Arizona garnishment exemption statute modeled after 15 U.S.C. §§ 1672–1673. In deciding which line of caselaw to follow, this Court has determined that *Frazer* provides the better legal analysis of the issue and is most closely analogous to the Tennessee garnishment exemption statute.

In *Daugherty*, 28 Ohio St.3d 441, 504 N.E.2d 1100, the Supreme Court of Ohio held that an Ohio debtor's earnings retain their exempt status when deposited into the debtor's personal checking account where the source of the funds is known or reasonably traceable to exempt earnings. Unlike TENN. CODE ANN. § 26–2–106, the Ohio statute contains express language strongly indicating that earnings are to remain exempt even after the earnings are received by the debtor. OHIO REV.CODE ANN. § 2329.66(A). The Ohio statute provides that persons domiciled in Ohio may hold property exempt from execution, garnishment, attachment and sale to satisfy a judgment or order. Thus, the Ohio statute governing the exemption of earnings from the reach of creditors was not limited merely to the garnishment of a debtor's

800

earnings while in the possession of third-party garnishees.

The Ohio Supreme Court in *Daugherty* compared the Ohio statute with the CCPA, 15 U.S.C. § 1673, stating: "Unlike the Consumer Credit Protection Act, R.C. 2329.66(A) protects the funds concerned [debtor's earnings and wages] not only from garnishment but also from attachment and execution. Thus, in contrast to the Consumer Credit Protection Act, the [Ohio] General Assembly apparently did intend to restrict creditors' access to exempt wages by providing for protection from attachment of monies while in the hands of the employee." *Id.* at 444–445, 504 N.E.2d at 1103. TENN.CODE ANN. § 26–2–106 is readily distinguishable from the Ohio statute in *Daugherty* because § 26–2–106 is closely modeled after 15 U.S.C. § 1673 and does not contain any language that seeks to exempt earnings from attachment and execution by creditors after the earnings have been received by debtors. The rationale of the Ohio Supreme Court in *Daugherty* supports this Court's interpretation of TENN.CODE ANN. § 26–2–106.

### C. Trustee As Representative Of Bankruptcy Estate

■ Lawrence makes a novel argument that the bankruptcy proceeding is in the nature of a garnishment for purposes of applying TENN.CODE ANN. § 26–2–106. The term "garnishment" is defined in TENN.CODE ANN. § 26–2–105(3) as "any legal or equitable procedure through which the earnings of an individual are required to be withheld for payment of any debt." Lawrence contends that bankruptcy is in effect a legal procedure for garnishment within the meaning of § 26–2–105(3). Based on the faulty premise that bankruptcy is a form of garnishment, Lawrence goes on to assert that the patients who owe the accounts receivable for medical services performed by Lawrence are garnishees under § 26–2–106 and the Bankruptcy Trustee is a judgment lien creditor attempting to collect the debtor's unpaid earnings from the patients-garnishees. Lawrence further takes the position that the Trustee's right to recover and collect accounts receivable from the patients on behalf of the bankruptcy estate is

governed and restricted by Tennessee garnishment statutes. Lawrence contends the Trustee can only collect the accounts receivable through garnishment of the nonexempt portion of the debtor's unpaid earnings which, under TENN.CODE ANN. § 26–2–106(a)(1), is 25% of Lawrence's accounts receivable. According to Lawrence, the remaining 75% of his earnings, *i.e.,* accounts receivable, are exempt from garnishment by the Trustee and should be paid over to Lawrence by the garnishees pursuant to TENN. CODE ANN. § 26–2–214. Lawrence does not cite any caselaw in support of his theory.

The Court concludes this argument is without merit and is predicated on an erroneous concept of the manner in which the Trustee functions in Chapter 7 bankruptcy proceedings. Lawrence's theory of how the Tennessee garnishment laws should be applied in the present case is not a correct statement of how the federal bankruptcy laws operate in these circumstances. The Court disagrees with Lawrence's attempt to portray and characterize the Bankruptcy Trustee as essentially being in the same posture as a judgment creditor of Lawrence for purposes of utilizing the Tennessee garnishment laws. The Trustee is not the equivalent of a creditor who has obtained a judgment against Lawrence and is trying to collect that judgment by the garnishment of Lawrence's earnings in the hands of third party garnishees.

The BANKRUPTCY CODE provides that when Lawrence filed his Chapter 7 bankruptcy petition, a bankruptcy estate was created. The bankruptcy estate is comprised of all legal and equitable interests of debtor Lawrence in property as of the date when the bankruptcy was commenced. 11 U.S.C. § 541(a)(1); *In re Wirmel,* 134 B.R. 258, 259 (Bankr.S.D.Ohio 1991). Any causes of action Lawrence had prior to bankruptcy against his patients to recover the accounts receivable became property of the bankruptcy estate pursuant to § 541(a)(1). *Dutka v. Rosenthal,* 1997 WL 225510, at *2 (6th Cir. May 1, 1997); *In re RCS Engineered Products Co., Inc.,* 102 F.3d 223, 225 (6th Cir.1996); *DeMarco v. Ohio Decorative Products, Inc.,* 1994 WL 59009, at *5 (6th Cir. Feb. 25,

1994); *Davis v. Ford Motor Co.*, 1992 WL 322377, at *3 (6th Cir. Nov. 5, 1992); *In re Cottrell*, 876 F.2d 540 (6th Cir.1989); *Bauer v. Commerce Union Bank, Clarksville, Tenn.*, 859 F.2d 438, 440–41 (6th Cir.1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).

The Trustee is the representative of the bankruptcy estate. *DeMarco*, 1994 WL 59009, at *5; *Bauer*, 859 F.2d at 441; 11 U.S.C. § 323(a). 11 U.S.C. § 704(1) provides that the Trustee shall "collect and reduce to money the property of the [bankruptcy] estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." It is the Trustee who has the exclusive standing and capacity to sue and be sued on behalf of the bankruptcy estate under 11 U.S.C. § 323(b). *DeMarco*, 1994 WL 59009, at *5; *Bauer*, 859 F.2d at 441; *Ball v. Nationscredit Financial Services Corp.*, 207 B.R. 869, 872 (N.D.Ill.1997). The Trustee is appointed by the Bankruptcy Court to take charge of the debtor's estate, collect assets, bring suit on the debtor's claims against other persons, defend actions against the estate, and otherwise administer the estate. *In re Asher*, 168 B.R. 614, 616 (Bankr.N.D.Ohio 1994); 11 U.S.C. § 704. Once he initiated the bankruptcy, debtor Lawrence lost standing to himself pursue any claims against his patients to collect the accounts receivable. *Dutka*, 1997 WL 225510, at *2; *DeMarco*, 1994 WL 59009, at *5; *Davis*, 1992 WL 322377, at *3; *Bauer*, 859 F.2d at 441; *Whitfield v. Ford Motor Co.*, 1995 WL 871142 (E.D.Mich. Feb. 27, 1995).

To carry out his duty to administer and liquidate the bankruptcy estate, the Trustee steps into the shoes of debtor Lawrence to collect the accounts receivable owed by Lawrence's patients. *In re Dow*, 132 B.R. 853, 861 (Bankr.S.D.Ohio 1991). Any right Lawrence has to bring a cause of action against his patients to collect and recover payment for his accounts receivable vests in the bankruptcy estate and are subject to the Trustee's control as the estate's representative. *DeMarco*, 1994 WL 59009, at *5; *In re Smith*, 185 B.R. 285, 292 (Bankr.S.D.Ill. 1995); *Folz v. BancOhio Nat'l Bank*, 88 B.R. 149 (S.D.Ohio 1987). Once Lawrence files for bankruptcy, the Trustee in effect is substituted for Lawrence with regard to collecting debts owed to Lawrence.

The Trustee, acting in his capacity as the representative of the bankruptcy estate, can bring a legal action directly against the patients in place of Lawrence to recover the accounts receivable in the same manner that Lawrence had a right to file a civil suit for damages prior to bankruptcy. If the Trustee should obtain a civil judgment on behalf of the bankruptcy estate against a Tennessee patient of Lawrence on an account receivable, the Trustee may utilize the Tennessee garnishment laws to aid in collecting the judgment in the same manner and to the same extent that Lawrence could have utilized the Tennessee garnishment laws to collect the debt owed to him prior to bankruptcy. The Trustee would then, however, be garnishing the earnings of the defendant patient to collect the judgment owed to the bankruptcy estate by the patient rather than, as Lawrence suggests, garnishing the "earnings" of Lawrence in the hands of the patient to collect debts owed by Lawrence to his creditors.

Any money recovered by the Trustee on the accounts receivable is paid into and becomes part of the bankruptcy estate to be distributed to creditors except to the extent that Lawrence can claim a valid personal property exemption pursuant to TENN.CODE ANN. § 26–2–102. Thus, the Court concludes that Lawrence is incorrect when he argues that the Trustee stands in the same position as one of Lawrence's judgment lien creditors when it comes to the application of the Tennessee garnishment statute, TENN.CODE ANN. § 26–2–106. Bankruptcy is not a form of "garnishment" as that term is defined in TENN.CODE ANN. § 26–2–105(3). Instead, the Tennessee garnishment laws may be utilized by a Chapter 7 Bankruptcy Trustee to collect money judgments owed to the bankruptcy estate when the Trustee has filed suit and obtained a judgment against another person who owes money to the bankruptcy debtor. Accordingly, when the Bankruptcy Trustee seeks to collect Lawrence's accounts receivable on behalf of the bankruptcy estate, the

Trustee is not the same as a judgment creditor of Lawrence who is trying to collect a debt owed by Lawrence through the garnishment of his earnings in the possession of third party garnishees.

### D. 11 U.S.C. 541(c)(2) and Constructive Trust

■ Finally, Lawrence contends in the alternative that if this Court holds that TENN. CODE ANN. § 26–2–106 is not an exemption in bankruptcy, then the accounts receivable should be excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Lawrence raises this particular argument for the first time on appeal in his reply brief. (Court File No. 4, pp. 9–13). He did not make the argument or claim during the proceedings before the bankruptcy court below. The bankruptcy court was never given an opportunity by Lawrence to consider the matter. Moreover, Lawrence did not include this specific issue in his statement of the issues for appeal as required by Bankruptcy Rule 8006. *In re McCauley*, 105 B.R. 315, 320–21 (E.D.Va.1989); *In re Pine Mountain*, Ltd., 80 B.R. 171, 173 (9th Cir. BAP 1987). Accordingly, this district court on appeal is not required to consider Lawrence's new claim that his accounts receivable are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2).

■ The well-established rule in the Sixth Circuit is that an appellate court will not consider arguments or issues raised for the first time on appeal unless there are exceptional circumstances. Such exceptional circumstances where either the proper decision is beyond doubt or a miscarriage of justice might otherwise result. *Bailey v. Floyd County Bd. of Educ. By and Through Towler*, 106 F.3d 135, 143 (6th Cir.1997); *Perez v. Aetna Life Ins. Co.*, 96 F.3d 813, 820 (6th Cir.1996); *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1002 (6th Cir.1994); *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 397 (6th Cir.1993), *cert. denied*, 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 194 (6th Cir.1992). This is an extremely narrow exception which is infrequently invoked. *Perez*, 96 F.3d at 820.

The exception enunciated by the Sixth Circuit is not applicable in the instant case and the Court will exercise its discretion to decline to decide the new issue on the merits. This Court is not persuaded that a substantial miscarriage of justice will occur unless it considers the new issue being raised by Lawrence for the first time on appeal. Lawrence's argument, that the accounts receivable from his medical practice concerning patients who have not paid Lawrence for personal services rendered should be excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2), falls short of being persuasive.

■ Lawrence's entire argument under § 541(c)(2) hinges on the questionable contention that his patients are holding in constructive trust the money they owe for medical services rendered to them by Lawrence. Section 541(c) provides that an interest of the debtor in property becomes property of the bankruptcy estate with the following exception under § 541(c)(2): "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Lawrence does not cite any competent legal authority in support of his bold allegation that the accounts receivable are held by the patients in a constructive trust for the benefit of debtor Lawrence. As a general rule, federal courts are very reluctant to impose constructive trusts in bankruptcy cases. *Omegas Group*, 16 F.3d at 1451.

■ Based on the facts and circumstances in the instant case, it appears that no such constructive trust exists under Tennessee law regarding Lawrence's accounts receivable for at least two obvious reasons. First, a constructive trust unlike an express trust, is an equitable remedy devised by courts. A constructive trust does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment imposing a constructive trust upon the defendant's property or assets. *Omegas Group*, 16 F.3d at 1451; *Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn.App.1977). Lawrence does

not allege and there is nothing in the record indicating that, prior to filing his bankruptcy petition, Lawrence brought suit against any of his patients to collect the accounts receivable and a court of competent jurisdiction granted relief to Lawrence in the form imposing a constructive trust on funds and property in the patients' possession. Accordingly, Lawrence has not shown that there is a court-ordered constructive trust in existence at this time which is cognizable under 11 U.S.C. § 541(c)(2). *See McCafferty,* 96 F.3d at 197, *Omegas Group,* 16 F.3d at 1451.

Second, the current relationship between the bankruptcy estate and Lawrence's patients regarding the accounts receivable is in the nature of a normal debtor-creditor relationship which does not require the creation of a constructive trust. Lawrence performed medical services as a podiatrist and the patients owe him fees for these services. The Bankruptcy Trustee can, if necessary, bring a routine civil action against the patients to recover the accounts receivable. There is no extraordinary misconduct on the part of the patients who now owe money to the bankruptcy estate requiring the application of equity principles to prevent an injustice.

A constructive trust is an equitable remedy applied by courts when necessary to serve the ends of justice. *Omegas Group,* 16 F.3d at 1451; *Black v. Boyd,* 248 F.2d 156, 162 (6th Cir.1957); *In re Tinnell Traffic Services, Inc.,* 41 B.R. 1018, 1021 (Bankr. M.D.Tenn.1984); *Rowlett v. Guthrie,* 867 S.W.2d 732, 734 (Tenn.App.1993); *Akers v. Gillentine,* 191 Tenn. 35, 39, 231 S.W.2d 369, 371 (1948). A constructive trust may arise against a person who by the commission of a wrongful or dishonest act including fraud, duress, concealment, and abuse of confidence has acquired or holds the legal right to property which he ought not, in equity and good conscience hold and enjoy. *Rutherford County v. City of Murfreesboro,* 202 Tenn. 455, 304 S.W.2d 635 (1957), *Rowlett,* 867 S.W.2d at 734; *Livesay v. Keaton,* 611 S.W.2d 581, 584 (Tenn.App.1980). Tennessee courts impose constructive trusts in four types of cases: (1) where a person procures legal title to property in violation of some express or implied duty owed to the true owner of the property; (2) where title to property is obtained by fraud, duress, concealment or other inequitable means; (3) where a person makes use of some relation, influence or confidence to obtain legal title to property upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits. *Myers v. Myers,* 891 S.W.2d 216, 219 (Tenn.App.1994); *Intersparex Leddin KG v. Al–Haddad,* 852 S.W.2d 245, 249 (Tenn.App.1992); *Browder v. Hite,* 602 S.W.2d 489, 492 (Tenn.App.1980); *see also In re Webb,* 187 B.R. 221, 229 n. 12 (Bankr. E.D.Tenn.1995). The record in the present case does not establish that the failure of Lawrence's patients to pay their bills or accounts receivable falls into any of these categories which would justify a court imposing of a constructive trust under Tennessee law.

The Court does not express a final opinion on the merits concerning Lawrence's claim that his accounts receivable are excluded from the property of the bankruptcy estate pursuant to 11 U.S.C.A. § 541(c)(2). The Court has taken the time to briefly explain some reasons why it considers this new claim to be of dubious merit for the purpose of demonstrating why the Court will not permit Lawrence to raise this new issue for the first time on appeal.

## VI. Conclusion

An order will enter affirming the bankruptcy court's decision and dismissing Lawrence's appeal.

## ORDER

In accordance with the accompanying memorandum opinion, the decision of the United States Bankruptcy Court rendered on January 14, 1997, is **AFFIRMED**. The appeal filed by debtor Michael Warren Lawrence is **DISMISSED** with the parties to each bear their own costs of this appeal

SO ORDERED.